Good morning. My name is Ian Tomlinson. I work in the law firm that represents Mr. Bell. We're here today on two issues. First, potential juror misconduct and a speedy trial. I'm going to start off with the juror misconduct. Basically, in a case like this, very rarely do you have a peek into the juror's mind that we can submit with the record. And in this case, we have that. We have Mr. Martin's letter, which I attached, that talks about his particular interests, ideas, thought processes about this defendant's, our client's, defense. And the crux of what happened in this trial was when they were doing voir dire, when the Court was conducting voir dire, the Court asked on three different occasions and noted each time, this case involves homosexual activity, it involves a homosexual advance and a murder or a homicide that followed. And on all three occasions it asked, knowing these things, can you still be impartial? Mr. Martin didn't say anything at any one of those junctures. Is it your contention that he was misrepresenting his views to the Court? Yes, sir. And what evidence do you have for that? The letter, Your Honor. And quite specifically, in this letter, he talks about how his thought, how he understands the homosexual ideology and how homosexuals act, react. But how does that relate to whether he thinks that he can be impartial about whether certain acts have or have not been committed? Well, I think, frankly, on his third, the third page of his letter, he sums up how he can't be impartial. He says, Mr. Bell, our client, is a weightlifter, every gay man's dream. He then talks about how he sees Mr., the victim must have seen Mr. Bell in shorts, and he says, we gay men take chances. He makes a pass. How else are you going to know, implying how else are you going to know whether or not he's gay? The point of it is, is what that went to was the heart of Mr. Bell's defense. Counsel, this sort of comes under the rubric of be careful what you wish for. The letter from the juror expresses his dissatisfaction with the fact that your client only got second-degree murder and not first-degree murder. So what's the harm here if you claim that you've got a juror who wanted a harsher penalty than was actually meted out against your client? You go back on retrial. Does your client understand that he may get first-degree murder if he gets a retrial? Yes, sir, he does. Yes. So what's the harm here if you've got a juror that you think has engaged in misconduct because he didn't get the more severe penalty he wanted? Well, Your Honor, the harm is that this type of ideology that should have been fleshed out in Gordier, and certainly there's nothing on the face of it that's wrong with what Mr. Martin thinks. But it should have been fleshed out in Gordier. And part of that is, is that it permeated, it had to have permeated the entire trial. Well, have you got any cases that hold that a jury, a juror can impeach the verdict by sending somebody a letter after the trial and say, I wish the SOB had gotten a heavier sentence? I do not, Your Honor. I didn't say that. Well, that's what this is, isn't it? If you're trying to impeach a verdict by a letter after the fact, after the trial, by a juror who thinks the person should have been punished more severely than he was. Now, how does that constitute juror misconduct? Well, not necessarily. I don't necessarily think we're trying to impeach the verdict by virtue of the letter. What our position is, is that during the Gordier process, and it falls squarely under the McDonough case, is this juror, Mr. Martin, should have told the Court these types of ideologies. He should have outed himself and said I might not be a good juror in this case because of my own personal preferences? Yes, sir. Much like three of the other jurors did. Well, what's the – where do you find the requirement that a person has to disclose his – his sexual preferences on – if nobody asks him a question? Well, I don't think – it's not necessarily a requirement. But in a case like this where it comes up on three occasions, very close in time to one another, the judge has asked for the Gordier, he – Mr. Martin, given his thought processes that are brought out in the letter, he should have told him or should have told the Court. And he could have approached – I'm not talking about outing someone in the middle of court or anything like that. The three jurors that were excused because of their thoughts on homosexuality came up to the bench, explained themselves to the Court, and without any further questioning from the Court or the attorneys were excused. Mr. Martin, had he done that, he would have likewise been excused for cause. Aren't you misconstruing McDowell, though, counsel? In that case, you really had a question of whether a juror failed to accurately respond or failed to elucidate something. It was repeatedly questioned. And the question here was whether the jurors could perform their duties honestly, whether they felt they could decide based upon the evidence that was presented. I'm interested where in the letter you find an express misrepresentation or an obligation under McDowell that this juror, Mr. Martin, had an obligation to come forward to the Court. Well, I think in page two, Your Honor. Would you read to me specifically what you're talking about? Well, I think it goes, I'll read it specifically. Page two, that's actually all one paragraph. But unless someone has a working knowledge of the mindset of a queen, in quotes, you need to rely on information provided by someone who does. And I'll stop there and just briefly, that's part of the problem is someone who does is him. And that's my point about it permeating the entire jury. But that's not what McDowell talks about. McDowell talks about, in effect, jurors, potential jurors lying on voir dire. That's the standard of McDowell, is it not? Well, it's failing to answer, well, yes, it's failing to honestly answer a question. And what did Mr. Martin fail to answer honestly regarding specific questions that were put to him? I think that the question about this case involves homosexuality and a homosexual advance. Does anything about that cause you to be impartial? That's where he failed to answer honestly. Because clearly in the letter, he expresses, and I agree that he wanted a tougher punishment. He didn't get it. But in that sense, in this letter, he expresses some particularities that he should have answered about being impartial. You know, gay men have learned through bitter experience that even the most subtle past can bring dire consequences. That's the heart of this defense, or the heart of our client's defense at trial, was that there was a past. Now, whether you characterize it as subtle or not, there was a past. And that thought process, Your Honor, we would submit he falsely or failed to honestly answer. I'll forward to your questions, and I'll reserve the rest for rebuttal. Thank you. Thank you. Respondents in this matter. On the issue of true or misconduct, there is no indication in the letter that Jury Martin answered any of their court's questions dishonestly or in a deceiving manner. The judge asked the jurors various ways whether the fact that there would be evidence of homosexual advances in the case rendered them not fair and impartial. And Jury Martin obviously did not think so, and the letter says nothing otherwise. In the letter, there were three other jurors who, because of their homosexuality, felt that they could not be fair and impartial. Counsel, the three that came up and sort of self-identified did identify as homosexuals, is that right? Or having at least felt that they could not be because they favored homosexuality or they viewed it favorably? Your Honor, one of the jurors said that she was in a lesbian relationship. Two of them, I believe, said that they had family members who were homosexuals, and they felt that because of those personal circumstances they could not be fair and impartial. But that's a personal choice for everyone to hold. Otherwise, it would mean that homosexuals could not serve on a jury whenever there was evidence such as that. Counsel, the rule cuts both ways, doesn't it? We could have people who view homosexuality as mortal sin who might also have to disqualify themselves because of their adverse feelings towards it. Yes, Your Honor. The issue before this court is whether the letter that Joe Martin sent to the judge indicates that he engaged in a misconduct by misrepresenting his ability to be fair and impartial. Counsel, I'll tell you what bothers me about the letter. What bothers me most about the letter is the sense that the juror may have thought that he understood more about the facts than the lawyers were willing to bring to it. That is, that he was willing to bring sort of his own experience and sort of add to the facts that counsel had brought. Certainly, Your Honor. The answer to that is that a juror can bring their personal experiences to the jury room and use that in making their factual determinations. What they cannot do is consider extrinsic evidence. A relatively recent case, Grotemeyer v. Hickman, 393-3871, said that the mere fact that the jury formally brought her outside experiences to bear on the case is not sufficient to make her alleged statements less improper. Subsequent to that, they said, we have said in our hold that a juror's past personal experiences may be an appropriate part of the jury's deliberations. So, Drew Martin certainly did have personal experiences about homosexuality. There was nothing wrong with him considering those views as long as he did not consider extrinsic evidence. And there's no indication that he did so. So, counsel, is there a – let's see if I can put it this way. From looking at the record, it's very clear that the judge said, I'm wanting to know if that, referring to the homosexuality, would affect anyone's ability to be impartial. In this case, Mr. Martin did not raise his hand, didn't say anything. So at least at the beginning of the trial, he stated that he was not going to have a problem with that. You look at the letter afterwards, and as Judge Vibey mentioned, it's pretty clear he has some strong feelings. However, he begins his letter, my name is Russ Martin. I was a juror in the Bell case. Having discharged my duty, I have a moral compulsion to write this letter. It almost suggests that he's done what he had to do, but now he wants to tell you some feelings that he has. What is the standard? Is the standard whether the juror feels that he or she can be impartial at the beginning of the case, so far as they know? Or do you look at the totality of the circumstances based upon what happened in the case? Well, Your Honor, a potential juror at the beginning of the trial can only say what he knows at the beginning of the trial, and he indicated that he could be fairly impartial, and it's a very good point you bring out. The jurors have having discharged my duty. So he has said in the letter that he has been fair and impartial, and now he wishes to express his views for the sentencing. So there's no indication that he was not fair and impartial. In fact, if the standard were not what the juror is looking at at the beginning of the case, that is, during voir dire, you'd almost have to go through after a trial and parse through the lives of every juror to see whether there were things in their lives that had influenced them in a particular way that had not been addressed before. And frankly, Your Honor, there is no evidence in this record that there was any juror misconduct, and the state court did not unreasonably apply any Supreme Court precedence here. I would just briefly note, unless the court has any further questions, that the second issue of speeding trial, there is no cause for the defendant's procedural default because the state trial court found that the defendant was not prejudiced by any delay, and so he could not make his ineffective assistance claim which is prejudiced as a large cause. If there are no further questions. Thank you very much. Thank you, Mr. Howell. Mr. Tomlinson, you have a little over a minute and a half. Thank you, Your Honor. Judge Smith asked about looking at jurors basically retrospectively, and he used the word totality of circumstances. We're not advocating a position where you have to go back and look at the jurors after trial, post-verdict, to see whether or not at that point and then take into account that they were fair and impartial. But counsel, it seems to me with respect that that's exactly what you're doing because if you look at the transcript, Mr. Martin did not speak. The judge asked a question whether the jurors could be impartial, and except for the two who asked to be excused because they didn't think they could be, nobody else said there was a problem. He has spoken after the fact. You have, other than referring to the letter which came after the fact, have not told, I don't think, anything that suggests that Mr. Martin lied or that at the point of the voir dire he knew he could not be impartial. Am I correct in that? You are, and in a sense, how can we? We can look into his mind and see at that moment in time whether or not he could have been fair and impartial. So if that's the case, then we go back to the letter. And as Judge Bybee mentioned, it is a little disturbing here because clearly this gentleman had some strong feelings. However, he wasn't asked about those. He was not asked about those. And jurors bring their own feelings to the jury box, as it were. And what I want to understand is what are you asking us to do here? Are you asking us to adopt a totality of the circumstances situation? Or what are you asking? I'm out of time. As long as I'm asking you a question, you can respond. I can respond. We're not asking you to adopt a totality of the circumstances test. I think that the test in place is just fine. We're asking that Your Honors apply that test to these unique circumstances where we do have a letter. And Mr. Martin, I've said it over and I apologize for repeating myself. Mr. Martin's letter provides a unique insight into what he was thinking prior and after that trial. He didn't change his thoughts. Those thought patterns didn't change between Wadeer and when he wrote the letter prior to sentence. But you don't know from this letter, do you, what he was thinking at Wadeer? You know what he thought once it got into the trial and evidence was presented, but what in this letter tells us what he was thinking at the time of the Wadeer? Well, I think I would point to the part about making a pass at a straight man and the particular thing, inner workings and thinking of Queens and what they do and don't do when during Warden. He didn't know anything about that at the time of the Wadeer, did he? How much did he know about the case? He knew that there was a homosexual act that was involved. Did he know it was a weightlifter? No, no, sir. Okay. I don't think he did. Did he know we had a queen involved? Reading from the record, I don't think so. This goes back to the question I asked Mr. Howe about how much a juror brings to it. Mr. Howe's answer is, well, of course, we have jurors who bring their own experiences all the time. That's very difficult to avoid. And unless you're advocating a rule that would disqualify all gays or lesbians in a case in which someone is accused of murdering someone after gay sex, then we're going to have to accept that experience. No, sir. I'm not advocating that at all. What I am saying is that in these types of cases where there are these particular nuances involving a homosexual act and a straight man, and the judge did ask. It involves, I think he said, a homosexual advance and a subsequent homicide. I can't speak for what trial counsel and the judge did at trial. Surely this would have even been easier had they moved for a new trial when the letter came in. But that didn't happen. So we're kind of replete of a record of what Mr. Martin was thinking other than the letter, and that's the insight that we're garnering from it. But we have to judge this case based upon what's in the record. Yes, sir. And based on what is in the record, by as I understand it, basically your own admission, you don't really know much what this juror was thinking at the time of the voir dire. Because the judge really didn't tell him much about the case, came a little bit. But many of these things that he felt could not have come out at that point because he didn't know what the case was going to be. Yes and no. Certainly I can't say what Mr. Martin was thinking. But what I, and I've said it before, what I can say is that letter has to speak volumes for what he was thinking. Kind of metaphysical. Somewhat. Thank you, Mr. Thomason. Bell v. Fizer is submitted. Thank counsel for the argument. The next case is Womack v. Del Papa.
judges: Goodwin, Bybee, M. Smith